GREGORY B. SMITH (USB # 6657)
GREG SMITH AND ASSOCIATES PC
111 E 5600 S #105
MURRAY, UT 84107
Telephone: (801) 651-1512
gs@justiceinutahnow.com
Attorney for Reed

___

### IN THE UNITED STATES DISTRICT COURT OF THE TENTH CIRCUIT
### SALT LAKE COUNTY, UTAH

| | |
|---|---|
| C. NICOLE REED.<br><br>            Plaintiff,<br>vs.<br><br>BACH HOMES (a Utah limited liability company); THE LAND GROUP, (a Utah limited liability company); BACH REALTY, LLC; (a Utah limited liability company); BACH TEAM (a Utah limited liability company); BRIAN RINDLISBACHER, SHON RINDLISBACHER; RANDY  RINDLIISBACHER; GREG RINDLISBACHER, and DOES I-X.<br><br>            Defendants. | **COMPLAINT<br>AND<br>DEMAND FOR JURY**<br><br>Civil Number<br><br>Judge |

COMPLAINT FOR VIOLATION OF THE FEDERAL FAIR LABOR STANDARDS ACT; WRONGFUL TERMINATION; UNLAWFUL RETALIATION; GENDER DISCRIMINATION; VIOLATION OF FEDERAL ELECTRONIC COMMUNICATIONS PRIVACY ACT; VIOLATION OF UTAH WAGE CLAIM ACT; UNJUST ENRICHMENT; BREACH OF CONTRACT; and DEMAND FOR JURY TRIAL

___

Plaintiff, C. NICOLE REED complains as follows:

This is a civil action brought by an employee for violations of the above-named acts relating to employment with Bach Homes for which she seeks wages and damages.

1

## I. INTRODUCTION

1. We live in a time when the most precious resource of a business is the people it draws together—employees who together achieve a mission larger than any one person can do alone. It's a time when employees' intellectual and creative capital is often worth more than traditional physical assets. And, it's a time when employees recognize their value and rights.

2. Federal and state statutes regulate almost every aspect of the employment relationship. In addition, Utah common law has greatly expanded in the last two decades, providing more grounds on which employees may sue.

## II. JURISDICTION

3. The Court has jurisdiction under § 18 USC 2510 et seq.; the FAIR LABOR STANDARDS ACT (and 29 U.S. Code § 216 - Penalties); the CIVIL RIGHTS ACT OF 1964.  Title VII of the Act, codified as Subchapter VI of Chapter 21 of title 42 of the United States Code, prohibits discrimination by covered employers on the basis of race, color, religion, sex or national origin (see 42 U.S.C. § 2000e-2[44]). Title VII applies to and covers an employer "who has fifteen (15) or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year" as written in the Definitions section under 42 U.S.C. §2000e(b).

4. The Court also has supplemental jurisdiction pursuant to 28 U.S. Code § 1367. Supplemental jurisdiction is appropriate for "gap time," wages that were earned above and beyond minimum wage, but perhaps not part of overtime hours, and which arise out of

general Utah contract law and laws of equity.[1]

5.    Reed's federal and state law claims against Bach Homes derive from a common focus of operative facts and are of such character that Reed would ordinarily be expected to try them in one judicial proceeding. Consequently, this court has pendent jurisdiction over Reed's state law claims against Bach Homes and the Rindlisbachers.

6.    A Right to Sue on these matters has been issued by the EEOC, which has been filed with the Court.

### III. VENUE

7.    Venue is proper in this Court pursuant to Utah Code § 78B-3-304(2) because the activities either took place in Salt Lake County, State of Utah, or Bach Homes place of business, which is located within this judicial district.

### IV. PARTIES

8.    Plaintiff C. NICOLE REED is a natural person residing within the County of Utah, State of Utah.

9.    Defendant, BACH HOMES, LLC (is a Utah limited liability company);

---

[1] Reed is seeking what she is owed under the FLSA, plus "gap time," and unjust enrichment, which relies on Utah state claims such as breach of contract and unjust enrichment/*quantum meruit*. In other words, for wages for fewer than forty hours per week at a rate greater than the minimum wage-which are not recoverable under the FLSA. Reed's recovery of such "gap time" wages is premised on the notion that an employer may not be liable under the FLSA "as long as the overall earnings for the non- overtime workweek in which the gap time hours worked equal or exceeded the amount due at the FLSA minimum wage for all hours worked in that week, including gap time hours." Federal Courts have allowed such claims for unjust enrichment or *quantum meruit* to proceed when the claim seeks something more than what the FLSA can provide—such as regular wages not paid at the contracted rate or "gap time" wages. *See* Tommey v. Computer Scis. Corp., No. 11-CV-02214-EFM-GLR, 2013 WL 1000659, at *2 (D. Kan. Mar. 13, 2013); *Sanchez v. Haltz Construction, Inc.,* 2012 WL 13514, *8 (N.D.Ill. Jan. 4, 2012) (citing *Nicholson v. UTi Worldwide, Inc.,* 2010 WL 551551, at *5 (S.D.Ill. Feb. 12, 2010)); *Osby v. Citigroup, Inc.,* 2008 WL 2074102, *2 (W.D.Mo. May 14, 2008).

Entity Number: 6110346-0160; Company Type: LLC – Domestic; Address: 11650 S State Suite 300 Draper, UT 840207143; Registered Agent: GREG DALE RINDLISBACHER; Registered Agent Address: 11650 SOUTH STATE STE 300; DRAPER, UT 84020;

Defendant, BACH TEAM, LLC, a Utah company; Entity Number: 6112136-0160; Address: 11650 SOUTH STATE STE 300 DRAPER, UT 84020; Registered Agent: GREG DALE RINDLISBACHER; Registered Agent Address: 11650 SOUTH STATE STE 300; DRAPER, UT 84020;

Defendant, THE LAND GROUP:  Entity Number: 5104953-0160 Company Type: LLC – Domestic; Address: 11650 S STATE ST STE 300 Draper, UT 84020.\, State of Origin: UT; Registered Agent: GREG RINDLISBACHER; Registered Agent Address: 11650 S STATE STE 300; DRAPER, UT 84020.

Defendants, BRIAN, SHON, RANDY AND GREG RINDLISBACHER (the Rindlisbachers)  are sued in their official capacities as officers and directors of the defendant corporations and reside in the County of Salt lake, State of Utah.

## V.  STATEMENT OF FACTS

10. Plaintiff, C. Nicole Reed was the employee of three defendant corporations engaged in the acquisition and development of residential property. The corporations are owned and operated by four brothers—the Rindlisbachers, who serve as the officers and directors of the four corporations. Though the corporatations are separate legal entities they function as one entity commonly referred to as Bach Homes.

11. Reed was the design manager and managed the design center operations. She kept the design center organized and stocked with samples of options for outfitting homes. She worked with suppliers and vendors on design center options and coordinated specific

buyer and model home installs. In addition, she designed model homes, including all the design details and furnishings, and helped oversee the companies' marketing efforts. She answered directly to the Rindlisbacher brothers.

12. Sometime around the first of February, 2016, Reed learned that she was paid differently than other male employees. While the male employees were paid on an hourly basis, she was paid a salary. An audit of her salary pay checks revealed that the company was regularly making improper deductions. If Reed missed a portion of a day's work, she was not paid for the entire day. On many occasions this caused her to work when she was ill to avoid losing the entire day's income. She was expected to work more than 8-hours per day, while the male, hourly paid employees were not. She was never paid for the overtime.

13. In the middle of February, 2016, Reed came down with the flu and double ear infection. Fearing she would not be paid if she wasn't in the office, she came to work, but was too ill to stay and not wanting to infect the other employees or clients, she elected to work from home. During this illness, she was in constant contact with the Rindlisbacher brothers, her coworkers and clients. Everyone knew she was working from home during that time. Nevertheless, Bach Homes refused to pay her for those days. In contrast and furtherance of Bach Homes discrimination, male employees would have been paid for sick time.

14. Defendants mocked Plaintiff for not having a traditional family and for not having children. Reed was further discriminated against by being compelled to use and pay for her personal cell phone for business while her male co-workers were provided with company cell phones or their phone bills paid by Bach Homes.

15. It was about this time that Reed learned that sophisticated video cameras and microphones were recording her every movement, activity, office and phone conversations—all without her knowledge or consent. In contrast, her male coworkers were

5

not subjected to the same invasion of privacy and hostile work environment.

16. Reed objected to her phone conversations with clients being recorded without the client's knowledge and consent because it violated federal and state wiretap laws.

17. On August 24, 2016, after bringing her grievances to the Rindlisbacher brothers, Reed was wrongfully terminated. She was given a final paycheck that contained a restrictive covenant requiring her to consent to the waiver of many of her legal rights when deposited or cashed. Reed objected to the restrictive covenant and requested a draft be issued to her without a restrictive covenant. The Rindlisbacher brothers and Bach Homes wrongfully refused and continue to refuse to pay the wages and other monies due Reed.

18. Prior to working full time for Bach Homes, Reed was employed by the University of Utah. After coming to work full time for Bach Homes, Bach Homes appropriated and used some of her prior designs for which she has never been compensated.

19. The reasonable value of that work would conservatively exceed $75,000.

20. Though Reed was to be paid a salary of $70,500, Bach Homes computed her pay using a method in which it deducted for work it considered nonexempt or that was not considered executive or administrative, i.e., below her job description. This effectively caused her actual salary to be $60,500 rather than $70,500 she was promised.

21. In addition, Reed was not paid promptly and accurately, whereas, the male employees were always paid accurately and on time.

22. Despite Reed being considered a salaried employee, Bach Homes used creative methods to make deductions from her salary, but never accounted for all her overtime, which it is legally obligated to pay.

23. Reed further believes that she was terminated because of her refusal to participate in certain illegal and improper dealings of Bach Homes. She refused to lie to

clients or mislead them, and she objected to client's conversations being recorded without their knowledge. Bach Homes and the Rindlisbacher brothers' discriminatory behavior toward Reed was in direct violation of its own employment policies.

24. Reed was given no advance warning that her performance was anything but stellar, leaving the only reasons for her termination her request that she be treated equally with the other male employees and her refusal to participate in wrongful and unlawful acts toward clients.

25. Bach Homes and the Rindlisbacher brothers can produce no evidence that Reed broke any company rule or violated any provision or policy of her employment. Her termination was in retaliation for her request for equal treatment with male employees and her refusal to participate in wrongful and unlawful acts toward clients.

26. Reed is entitled to wages and damages under the Federal Labor Standards Act.

## VI. CAUSES OF ACTION

### COUNT I

**(Unpaid wages—Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b)**

27. Reed re-alleges and incorporates by reference the allegations contained in the paragraphs above.

28. The FLSA requires covered employers to pay a minimum wage and overtime wages.

29. Bach Homes were covered employers the entire time Reed worked for Bach Homes.

30. While working for Bach Homes, Reed was a non-exempt employee for

purposes of the FLSA.

31. "Regulations implementing this minimum wage provision further provide that an employer must pay its employees a minimum wage "free and clear." 29 C.F.R. § 531.35. In other words, the minimum wage must be paid "finally and unconditionally."

32. In this case, it was not paid finally and unconditionally because the employer demanded Reed give up valuable rights via the restrictive endorsement.

33. The Federal Circuit has acknowledged the "usual rule … that a claim for unpaid overtime under the FLSA accrues at the end of each pay period when it is not paid." *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988) (citing Beebe v. United States, 640 F.2d 1283 (1981)).

34. Thus, Reed was not timely paid and her claim has accrued and is due and owing.

35. Section 16(b) of the FLSA, 29 U.S.C. § 216(b), 29 USC §§ 206-207 and other laws entitle an employee to recover all unpaid wages, an equivalent amount as liquidated damages, and reasonable attorneys' fees and costs when their employer has failed to pay minimum wages, for which Reed prays.

36. The amounts of damages will be proven at trial, but the unpaid overtime is at least $6,500.

## COUNT II
### (Unlawful Retaliation)

37. The FLSA makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint ... under or related to this chapter." 29 U.S.C. § 215(a)(3).

38. As the facts, have shown, once Reed began raising the pay issues, Bach

Homes took actions to force her out of employment with them forever.

## COUNT III–IV
### (Unjust Enrichment/Breach of Contract)

39. Reed realleges and incorporates by reference the allegations contained in the paragraphs above.

40. Reed repeatedly and continuously conferred benefits on Bach Homes for which she was not properly paid.

41. Bach Homes knew they were taking advantage of Reed because the benefits at issue were the type of benefits for which a person (particularly an employee) would normally be paid.

42. In other words, Bach Homes appreciated and had knowledge of the benefits at issue.

43. Finally, Bach Homes knowingly accepted and retained the benefits at issue under such circumstances as to make it inequitable for Bach Homes to retain the benefits of Reed's work without payment of that value to Reed.

## COUNT V
### (Utah Statutory Wage Violation)

44. In Utah (pursuant to Utah Code Ann. § 34-28-5), "[when] an employer separates an employee from the employer's payroll [which happened in this case on or about August 24, 2016 when Bach Homes fired Reed] the unpaid wages of the employee become due immediately [the minimum amount of that is described on the face of Exhibit A]; and the employer shall pay the wages to the employee within 24 hours of the time of separation at the specified place of payment [nowhere does this law state that the employer can condition that

payment upon the employee's signing of a restrictive endorsement whereby the employee would give up valuable rights]; further, "[in] case of failure to pay wages due an employee within 24 hours of written demand [at the filing date of this lawsuit, the wages have still not been paid], the wages of the employee shall continue from the date of demand until paid, but in no event to exceed 60 days, at the same rate that the employee received at the time of separation. The employee may recover the penalty thus accruing to the employee in a civil action.

45. Also, pursuant to Utah Code Ann. § 34-27-1, [whenever an] employee shall have cause to bring suit for wages earned and due according to the terms of his employment and shall establish by the decision of the court that the amount for which he has brought suit is justly due, and that a demand has been made in writing at least 15-days before suit was brought for a sum not to exceed the amount so found due, then it shall be the duty of the court before which the case shall be tried to grant Reed a reasonable attorneys' fee in addition to the amount found due for wages, to be taxed as costs of suit.

46. Thus, pursuant to this law, Reed is asking for attorney fees and her other costs.

## COUNT VI
### (Wrongful Termination)

47. Reed was fired for refusing to go along with illegal activity, which is one of the prohibited reasons for firing an at-will employee in Utah: "(i) **refusing to commit an illegal or wrongful act**, such as refusing to violate the antitrust laws; (ii) performing a public obligation, such as accepting jury duty; (iii) exercising a legal right or privilege, such as filing a workers' compensation claim; or (iv) reporting to a public authority criminal activity of the employer. *Hansen v. Am. Online, Inc.,* 2004 UT 62, ¶ 9, 96 P.3d 950, 952. (Bold added.)

## COUNT VII

**(Violation of 18 U.S.C. § 2511(1)(a) for Intercepting an Electronic Communication)**

48. Bach Homes deliberately and purposefully spied on Reed and intercepted her oral conversations. Those conversations consisted of both professional and personal communications.

49. This was done repeatedly and systematically via special digital recording cameras and microphones that were trained on Reed.

50. This was done with the clear intent to spy on Reed.

51. The United States Code (18 U.S.C. § 2520) confers a private right of action under the Wiretap Act.

52. The Wiretap Act generally prohibits the "interception" of "wire, oral, or electronic communications," which is exactly what Bach Homes did to Reed repeatedly during her employment.

53. Specifically, the Wiretap Act provides a private right of action for Reed in this case against Bach Homes because they intentionally intercepted, endeavored to intercept, or procured another person to intercept or endeavor to intercept, Reed's wire, oral, or electronic communications. 18 U.S.C. § 2511(1)(a), or it intentionally used, or endeavored to use, the contents of Reed's wire, oral, or electronic communications, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of [the Wiretap Act]" 18 U.S.C. § 2511(1)(d). In other words, Bach Homes (1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) Reed's electronic and oral communication (5) using a device (camera and microphone). *Blumofe v.*

*Pharmatrak, Inc.* (*In re Pharmatrak Privacy Litig.*), 329 F.3d 9, 18 (1st Cir. 2003).

54. Many of the communications intercepted were communications that Reed was having on her cell phone, and often both parties would be on speakerphone, believing the conversation was private. Many times Reed was meeting with multiple buyers who were also present in the design center making upgrading selections for their homes and unknowingly being recorded by Bach Homes.

55. Reed had the reasonable and justifiable expectation that her calls were private.

56. Further, the interceptions at issue utilized interstate "blue tooth" technology, and Brian Rindlisbacher would review the intercepted communications via his cell phone (the video and audio was stored on a cyberspace cloud, which were backed up in states other than Utah).

57. Utah law is also implemented: "… a person whose wire, electronic, or oral communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover relief as appropriate from the person or entity that engaged in the violation."

58. In an action under this section appropriate relief includes:
(a) preliminary and other equitable or declaratory relief as is appropriate;
(b) damages under Subsection (3) and punitive damages in appropriate cases; and
(c) a reasonable attorney's fee and reasonably incurred litigation costs.

59. (i) if the person who engaged in the conduct has not previously been enjoined under Subsection 77-23a-4 (11) and has not been found liable in a prior civil action under this section, the court shall assess the greater of the sum of actual damages suffered by plaintiff, or the statutory damages of not less than $50 nor more than $500;

60. (ii) if on one prior occasion the person who engaged in the conduct has been enjoined under Subsection 77-23a-4 (11) or has been liable in a civil action under this section, the court shall assess the greater of the sum of actual damages suffered by the plaintiff, or statutory damages of not less than $100 and not more than $1,000;

61. (b) in any other action under this section, the court may assess as damages whichever is the greater of:

(i) the sum of the actual damages suffered by Reed and any profits made by the violator as a result of the violations; or

(ii) statutory damages of $100 a day for each day of violation, or $10,000, whichever is greater.

62. (5) A civil action under this section may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation.

63. This matter has been brought within the jurisdictional two-year period.

## COUNT VIII

64. She reserves the right to bring any other action that the facts (known or unknown) will support.

## IX. JURY DEMAND

65. Reed requests a jury trial.

## X.  PRAYER FOR RELIEF

41. Reed requests and prays that this Court:

   a. Adjudge and decree that Bach Homes and the Rindlisbacher brothers have engaged in the conduct alleged herein;

   b. Order that Bach Homes pay all statutory damages as a result of their unlawful conduct;

    c.  Order that Bach Homes pay all compensatory damages as a result of their unlawful conduct such as liquidated damages (an equal amount of the unpaid minimum wage);

    d.  Award attorneys' fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action; and

    e.  Grant all other such relief as the Court deems necessary and proper, and what has been prayed for *supra*.

    DATED this 25th of March 2017.


    /s/ Gregory B. Smith, Attorney for Plaintiff